***B*ICKERTON *L*EE *D*ANG & *S*ULLIVAN, LLLP**
JAMES J. BICKERTON        3085
745 Fort Street, Suite 801
Honolulu, Hawaii 96813
Telephone: (808) 599-3811
E-mail:<u>bickerton@bsds.com;</u>

MICHAEL J. GREEN          4451
Davies Pacific Center
Suite 2201
841 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
E-mail: michaeljgreen@hawaii.rr.com

Attorneys for Plaintiff
BENJAMIN J. CAYETANO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BENJAMIN J. CAYETANO, | ) | CIVIL NO. 12-CV-00619 SOM-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S REPLY** |
| vs. | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF PLAINTIFF'S MOTION FOR** |
| HAWAII CARPENTERS UNION | ) | **ATTORNEY'S FEES AND** |
| MARKET RECOVERY FUND dba | ) | **COSTS; EXHIBITS "A" and "B";** |
| PACIFIC RESOURCE | ) | **CERTIFICATE OF SERVICE** |
| PARTNERSHIP; JOHN D. | ) | |
| WHITE, JR.; HAWAII | ) | |
| CARPENTERS' UNION; PACIFIC | ) | |
| RESOURCE PARTNERSHIP PAC; | ) | |
| HOAKEA COMMUNICATIONS | ) | |
| LLC; BARBARA J. TANABE; JIM | ) | |
| MCCOY; SEAN NEWCAMP; | ) | |
| THALIA CHOY; ALAN | ) | |
| SHINTANI; STEVEN HIDANO; | ) | |
| GERARD SAKAMOTO; MARK | ) | |
| KUPAHU; WILLIE MAGLINTI; | ) | |

| | |
|---|---|
| LEONARD HOSHIJO; LANCE YOSHIMURA; KEN KAWAMOTO; BILL WILSON; LANCE INOUYE; CRAIG FUKUDA; DARREN HO; JOHN DOES 1-50; JANE DOES 1-50; DOE ENTITIES 1-50, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiff's application for attorneys' fees poses the question: Was it "objectively reasonable" to file the Notice of Removal? *See, e.g.*, *Smith v. Kawailoa Development LLP*, 2011 WL 4971165, 4 (D.Hawai'i 2011) ("courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal"). Plaintiff respectfully submits that it was not "objectively reasonable."

Defendants use the occasion of this memorandum in opposition to the request for fees to try and submit additional briefing on the merits of the prior motion to remand, even though briefing is closed on that issue, insisting not merely that their position was "objectively reasonable," but was in fact correct. These arguments are not new, however, but merely repeat and rehash what they stated in their memorandum in opposition to remand.

Plaintiff is reluctant to assume an outcome of the remand motion when it is still *sub judice*, but does so here because the Court's instruction to treat the request

for fees as a new motion obligates Plaintiff to explain how it was not "objectively reasonable" for Defendants to remove the case in these circumstances.

Defendants' main approach appears to be to cite again the cases it relied on in opposition to remand and assert that these cases gave it enough plausible grounds to assert that Section 301 pre-emption. When we examine the cases in question, however, we see no facts or law in them that would convince an "objectively reasonable" person that they extend to this case.

For example, *Chissie v. WinCo Foods, LLC*, 2012 WL 487652, 2 (E.D.Cal. 2012) involved an employee under the CBA suing her employer for defamation. Not only was the suit between **two parties to the CBA**, but the suit required the court "to ascertain the parties' expectations both in terms of the conditions of employment and the nature and extent of any necessary discipline." *Id*. The *Chissie* case did not involve any issue of "vicarious" or "respondeat superior" liability. Nothing in this fact pattern could persuade an "objectively reasonable" person that *Chissie* would control in a suit by a third-party who was not signatory to a CBA for defamatory statements that had nothing to do with anyone's employment or any conditions of employment.

Defendants also cited again to another unpublished case, *Cerda v. United Brotherhood of Carpenters and Joiner of America et al.*, Case No. CV-F-05-00616

OWW LJO (E.D. CA., June 27, 2005).  This case is not even available on Westlaw.  However, a subsequent decision in the same case makes clear that federal subject matter jurisdiction disappeared when the United Brotherhood was removed as a party.  *Cerda v. United Broth. of Carpenters and Joiner of America*, 2005 WL 1836984, 1 -2 (E.D.Cal. 2005) (*Cerda II*) (a copy of *Cerda II* is attached as Exhibit "A").  While the court noted that it could retain jurisdiction because the case had properly been removed before the Brotherhood was dismissed, it chose not to.  The significance is that here, the CBA-governed entity relied on to create the preemption argument – an unnamed Funding Doe Defendant – has not yet been joined.  *Cerda II* teaches us that when that entity is not a party, there is no jurisdiction.

Defendants also rely on *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057 (9th Cir. 1989) as another case that established they were being "objectively reasonable."  However, in *Shane*, the defamation was based on publication of a paper whose publication *was required* under the CBA:

> The CBA requires employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union. Any claim based on the discharge notification is, therefore, "inextricably intertwined" with the CBA

*Shane v. Greyhound Lines, Inc.,* 868 F.2d 1057, 1063 (9th Cir. 1989) (footnote omitted).  An objectively reasonable person would not leap from *Shane* to this case or treat it as "on point" here.

4

It is plain that Defendants' entire theory of preemption rested on the alleged conduct of parties who have not yet been named or joined in the suit (and who never could be joined as Doe Defendants in this court because Doe procedure is lacking under the Federal Rules).  Defendants made no serious argument that their own liability turns on CBA provisions.  Defendants make much of the fact that Plaintiff may seek to hold these as-yet-unnamed defendants liable for knowingly funding defamatory publications.  Yet such liability is hardly the novel proposition that Defendants contend, nor does it turn on what the CBA says.  Providing the funds to allow something to be published with knowledge that it is going to be published – which is all that Plaintiff alleges – is simply another way of saying that someone was a publisher of the libel, an ordinary element of a state law claim independent of the CBA.

Paragraph 35 of the Complaint merely alleges the following against the Doe defendants

> The PRP funds that are given to PRPPAC and are used to fund publication of the false and defamatory advertisements are given to PRP by certain Doe Defendants ("the Funding Doe Defendants") whose identity PRP has thus far concealed. The Funding Doe Defendants have representatives among the Trustee Defendants. ***These Funding Doe Defendants are aware of and make their contributions to PRP with the knowledge that the contributions are and will be used to fund the publication of false and defamatory speech harmful to Plaintiff***, and as to which these Funding Doe Defendants have the requisite wrongful and actionable state of mind.

(Emphasis added).

5

Whether or not the Funding Doe Defendants are obligated to contribute to PRP under the CBA or whether the amount of the required contribution is set by the CBA is of no moment to the analysis of whether they funded ***knowing the defamatory nature*** of the funded publications.  Defendants' argument appears to assume that the CBA could bind the Funding Doe Defendants to commit torts under state law, a dubious proposition for which they offer *no* authority, let alone "objectively reasonable" authority.[1]  Obviously, whether they commit a tort is a question independent of any duty they have under the CBA and there should be no immunity for a corporation from common law liability to for libel of someone who is not even a party to a CBA merely because the corporation is a signatory to a CBA that does not compel libel, regardless of whether it compels funding.

The question that controls the Doe Defendants' potential liability is their state of mind, not whether the money changed hands (which it undisputedly did and which would not require "interpretation" of the CBA to establish).  Their knowledge and state of mind when they paid that money is the matter in dispute,

---

[1] It is not clear whether Defendants are now arguing that some compulsion to contribute funds to PRP based on the CBA gives them an affirmative defense.  If so, it would not be "objectively reasonable" to claim preemption.  *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 398-99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (holding that a defendant cannot subject a state law claim to federal preemption by raising a ***defense*** that requires analysis of a CBA; preemption must be based on the right claimed, not the defense thereto).

6

and that is not determined by the provisions of the CBA. It was not "objectively reasonable" for Defendants to contend otherwise.

A case that shows how unreasonable Defendants' construction of the law is can be found in a recent decision from the federal district court in Rhode Island. In *Poole v. Mackey*, 2012 WL 4096368, 4 (D.R.I., 2012) (copy attached as Exhibit "B"), the court noted that Section 301 of the LMRA excludes from the "sweep" of preemption claims involving "nonnegotiable rights conferred on individual employees as a matter of state law" and that:

> These rights include constitutional-type rights, such as the right to be free from certain forms of discrimination, *see Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743 (9th Cir.), as well as other rights traditionally outside the realm of collective bargaining, ***such as libel and defamation claims in some instances***. See Johnson v. Anheuser Busch, Inc., 876 F.2d 620, 625 (8th Cir.1989) ("... elements necessary to prove the libel claim against [plaintiff's co-worker] Lewis do not require construction of any term of the collective bargaining agreement); *Luecke v. Schnucks Markets, Inc.,* 85 F.3d 356, 360 (8th Cir.1996) (claim that employer allegedly disseminated false information about plaintiff not preempted).

*Poole v. Mackey* 2012 WL 4096368 at 4 (emphasis added).

The *Poole* court went on to explain:

> Nonetheless, the duty to refrain from spreading damaging lies about a co-worker is not one that arises from the terms of the [CBA] Contract. The Court concludes that the duty not to circulate falsehoods about a colleague is one that exists ***in the moral and legal realm, outside the terms of a union contract.***
>
> As for the second prong of the *Lingle* test, the Court is convinced that an analysis of Defendant Mackey's letter, its truthfulness and its

7

> impact on Plaintiff's tenure candidacy and reputation, would not require any consultation of the Contract. The issue of the privileged nature of Mackey's letter may possibly be addressed in the Contract; although it is unlikely that any union contract would confer privilege on a co-worker's submission of malicious lies, if indeed, Plaintiff's allegations prove to be true. Either way, the Court concludes that ***no part of the analysis of Plaintiff's libel claim represents "a real interpretive dispute" of the Contract language***, as described by the First Circuit in *Lydon v. Boston Sand & Gravel Co.,* 175 F.3d at 10.

*Poole v. Mackey,* 2012 WL 4096368 at 4(emphasis added).

Finally, Defendants cite *Montez v. Operating Engineers Local Union #3*, 2010 U.S.Dist. LEXIS 74677 (D. Haw. July 23, 2010) (cited by Plaintiff as *Montez v. Operating Engineers Local Union Member Number 3*, 2010 WL 2900830 (D. Haw. 2010)), as if it provided their "objectively reasonable" basis. They quote from *Montez* with the following emphasis: "court must consider whether the plaintiff's asserted cause of action involves a right conferred on the plaintiff by virtue of state law or is instead ***grounded in*** a CBA" (emphasis supplied in Defendants' memorandum). Defendants then devise their own meaning for the phrase "grounded in," despite the fact that the obvious implication is that it has the same meaning as the term in the clause that precedes it: "a right conferred on the plaintiff by...." Plainly, the right to bring a claim for libel is one "conferred on the plaintiff by state law," not conferred by the CBA. "Grounded in" means no more than this.

The bottom line is that the grounds for claiming federal preemption of these common law claims brought by a stranger to the CBA that do not "arise from" the

8

CBA or require any "interpretation" of it were exceedingly tenuous and remote, unjustified by any case on point or even close to point. In those circumstances, it was nothing more than a diversionary or delaying tactic to remove the case – a goal Defendants achieved as we are now four months post-filing of the suit and even the basic question of what forum we are in remains unresolved. Accordingly, it is respectfully submitted that Plaintiff should be awarded his fees and costs.

Dated Honolulu, Hawaii, February 15, 2013

*/s/ James J. Bickerton*
JAMES J. BICKERTON

Counsel for Plaintiff
BENJAMIN J. CAYETANO

9